2012 ME 85

**ESTATE OF Stanley PINKHAM**

v.

**CARGILL, INC.**

Supreme Judicial Court of Maine.

Argued: April 13, 2012.

Decided: July 3, 2012.

Richard Silver, Esq. (orally), Russell & Silver, P.A., Bangor, for appellant Estate of Stanley Pinkham.

Clifford H. Ruprecht, Esq. (orally), Pierce Atwood LLP, Portland, for appellee Cargill, Inc.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, MEAD, GORMAN, and JABAR, JJ.

JABAR, J.

[¶ 1] The Estate of Stanley Pinkham (Estate) [1] appeals from the judgment of the Superior Court (Penobscot County, *Anderson, J.*) granting Cargill, Inc.'s motion for summary judgment on the Estate's complaint. The Estate argues that it provided sufficient evidence to create a genuine issue of material fact, thereby rendering summary judgment inappropriate. The Estate further argues that the court erred in concluding that the Estate failed to meet its burden of proof to establish facts from which a fact-finder could infer that Cargill's boneless turkey product was defective. We agree that summary judgment was not proper given the facts presented in this case, and we vacate the court's judgment and remand for further proceedings.

---

1. Stanley Pinkham died about two and a half years after sustaining the injury in dispute in this case. The Estate is not asserting a wrongful death claim, and his death is not an issue in this case.

## I. BACKGROUND

[¶ 2] Viewing the evidence in the light most favorable to the non-prevailing party, the summary judgment record supports the following facts. On or about August 23, 2004, at about 9:00 p.m., Stanley Pinkham consumed a hot turkey sandwich during his break as a line cook at Dysart's Truck Stop and Restaurant. Cargill manufactured the boneless turkey product in Pinkham's sandwich, and the kitchen staff at Dysart's occasionally found pieces of bone in that turkey product. In the middle of or immediately after eating the sandwich, Pinkham experienced severe and sudden pain in his upper abdominal area and thought that he might be suffering from a heart attack. Shortly thereafter, he was taken by ambulance to Eastern Maine Medical Center. At the hospital, Donald M. Clough, M.D., initially evaluated Pinkham and determined that he most likely had an "esophageal tear or perforation."

[¶ 3] Unable to locate the injury in a laparotomy procedure, Clough called in Scott D. Stern, D.O., a specialist in gastroenterology, to perform an upper endoscopy. Stern discovered a small perforation in Pinkham's esophagus as well as a small food bolus containing fragments of bony or cartilaginous material. Although Stern removed the food substance from the area of the esophageal perforation, he did not remove any food product or other substance from Pinkham's body. After Stern located the site of the injury, Clough called in Felix Hernandez, M.D., to perform thoracic surgery to repair the esophageal perforation.

[¶ 4] During his deposition as well as in a letter addressed to Pinkham's Nurse Case Manager, Stern noted that there were small, white cartilaginous fragments that appeared to be bone fragments in the food bolus, measuring no more than one or two millimeters in size. When questioned at his deposition about what caused Pinkham's esophageal injury, Stern agreed that it was a "perforation secondary to a foreign body." Stern noted that even if Pinkham had a pre-existing condition that made his esophagus more susceptible to injury, an additional factor would most likely have to be present for this type of injury to occur. He explained that the additional factor could be aggressive retching or vomiting,[2] or a foreign body. Finally, Stern said that, aside from a foreign body or aggressive retching or vomiting, he could not think of any other cause of an esophageal perforation.

[¶ 5] On May 13, 2009, the Estate filed a complaint naming Cargill and Poultry Products of Maine, Inc.,[3] as defendants. The complaint requested relief for Pinkham's esophageal injury, citing Maine's law establishing liability for "[d]efective or unreasonably dangerous goods" as the basis for Cargill's liability. 14 M.R.S. § 221 (2011). On October 13, 2010, Cargill filed a motion for summary judgment and a statement of material facts. The Estate opposed the motion for summary judgment and filed an opposing statement of material facts, to which Cargill filed a response.

[¶ 6] As part of its opposition to Cargill's motion, the Estate relied on three pieces of evidence that the court excluded as inadmissible hearsay. The excluded evidence comprised an affidavit by Cheryl Pinkham, Pinkham's former spouse; an affidavit by Tina O'Donnell, Pinkham's daughter; and a transcribed copy of a

---

2. Neither party asserts that Pinkham experienced aggressive retching or vomiting prior to his injury.

3. The complaint against Poultry Products of Maine, Inc., was dismissed after the two parties reached a settlement agreement.

recorded conversation between Pinkham and an insurance adjuster. Both of the affidavits asserted that Hernandez told the affiants immediately after the surgery that a bone or "fragments" caused Pinkham's esophageal injury. The court excluded both affidavits as inadmissible hearsay.

[¶ 7] The Estate also offered Pinkham's transcribed conversation with an insurance adjuster to establish prima facie evidence that Pinkham was injured when he swallowed a bite of the turkey sandwich. The court also excluded this statement as inadmissible hearsay. On appeal, the Estate argues that this conversation is admissible for an entirely different purpose—to rebut Cargill's assertion that Pinkham had been having difficulty swallowing before he ate the turkey sandwich. The Estate now contends that Pinkham's statement impeaches a report created and signed by Clough on August 26, 2004, stating that, during Pinkham's intake interview at the hospital, Pinkham reported that, "for the past several weeks, he has noticed mild dysphagia." [4] However, because the Estate did not include this portion of Pinkham's conversation with the insurance adjuster in its opposing statement of material facts in the summary judgment proceeding, the court did not have the opportunity to consider or to rule on its admissibility.

[¶ 8] After considering the motion for summary judgment, the court granted the motion in favor of Cargill, noting that Maine has not yet established which test to use when evaluating a strict liability claim for an allegedly defective food product pursuant to Maine's strict liability statute, 14 M.R.S. § 221. The court recognized that, prior to the enactment of the strict liability statute, P.L. 1973, ch. 466, § 1 (effective Oct. 3, 1973), we used a test similar to the "foreign-natural" doctrine [5] when addressing an injury caused by a food product in an implied warranty of merchantability case. *Kobeckis v. Budzko*, 225 A.2d 418, 423 (Me.1967). Recognizing that the validity of that test has come under attack, the court ultimately evaluated the summary judgment motion under both the traditional "foreign-natural" doctrine and the modern "reasonable expectation" test.[6] The court concluded that, because bone is naturally found in turkey, and because the average consumer would reasonably expect to find bone fragments up to two millimeters in size in processed "boneless" turkey product, the contents of the food bolus discovered in Pinkham's esophagus did not demonstrate that the product was defective as a matter of law. The court also determined that, because the Estate

4. "Dysphagia" is a medical term used to describe difficulty with swallowing.

Cargill introduced Clough's medical report, in which he noted that Pinkham "has noticed mild dysphagia," at the summary judgment stage in its reply statement of material facts. Although the Estate had already introduced Pinkham's transcribed conversation with the insurance adjuster in its opposing statement of material facts, the Estate did not direct the court to Pinkham's statement that he had never experienced a difficulty with swallowing before the injury. *See* M.R. Civ. P. 56(h)(4).

5. The "foreign-natural" doctrine provides that a food producer is not liable for anything found in the food product that naturally exists in the ingredients. *Newton v. Standard Candy Co.*, No. 8:06CV242, 2008 WL 752599, at *2, 2008 U.S. Dist. LEXIS 21886, at *6 (D.Neb. Mar. 19, 2008).

6. The "reasonable expectation" test provides that the producer will be liable for injuries that are caused by any substance, including natural ingredients, which the consumer "would not reasonably have expected to find . . . in the product." *Jackson v. Nestle–Beich, Inc.*, 147 Ill.2d 408, 168 Ill.Dec. 147, 589 N.E.2d 547, 548 (1992).

failed to show that the injury was not caused solely by something other than the defective food product, the Estate could not benefit from an inference that Cargill's processed turkey product was defective. The Estate timely appealed pursuant to 14 M.R.S. § 1851 (2011) and M.R. App. P. 2.

## II. DISCUSSION

[¶ 9] "We review the grant of a motion for summary judgment de novo," and consider both the evidence and any reasonable inferences that the evidence may produce "in the light most favorable to the party against whom the summary judgment has been granted in order to determine" if there is a genuine issue of material fact. *Inkel v. Livingston*, 2005 ME 42, ¶ 4, 869 A.2d 745 (quotation marks omitted). "When the moving party is the defendant, the burden rests on that party to show that the evidence fails to establish a prima facie case for each element of the cause of action." *Wentworth v. Sebra*, 2003 ME 97, ¶ 9, 829 A.2d 520.

[¶ 10] The Estate challenges the Superior Court's judgment in two ways. First, the Estate argues that it provided sufficient evidence to create genuine issues of material fact as to whether a bone in the turkey product caused Pinkham's injury and whether the product was defective. Second, the Estate argues that the court erred when it concluded that the Estate could not benefit from an inference that the product was defective, as provided in the Restatement (Third) of Torts: Products Liability § 3 (1998). Before we can address these arguments, we must decide what test to use when evaluating a defective food product case.

A. "Reasonable Expectation" Test

[¶ 11] We have not yet had the opportunity to decide what test should apply to strict liability claims involving food products. Our only decision addressing liability for an injury caused by a food product was decided in 1967, *Kobeckis*, 225 A.2d 418, six years before Maine's strict liability statute addressing "[d]effective or unreasonably dangerous goods," 14 M.R.S. § 221, was enacted. P.L.1973, ch. 466, § 1 (effective Oct. 3, 1973). In that case, we held that live trichinae in raw pork was a "natural ... attribute" of pork and therefore the merchant was not liable for injuries cause by the trichinae. *Kobeckis*, 225 A.2d at 423.

[¶ 12] Currently, there are two tests that courts apply when faced with a defective food product claim. The traditional test, and the one most similar to what we used in *Kobeckis*, is called the "foreign-natural" doctrine. The United States District Court for the District of Nebraska best defined this test: "The 'foreign-natural' doctrine provides there is no liability if the food product is natural to the ingredients; whereas, liability exists if the substance is foreign to the ingredients, and the manufacturer can be held liable for injuries." *Newton v. Standard Candy Co.*, No. 8:06CV242, 2008 WL 752599, at *2, 2008 U.S. Dist. LEXIS 21886, at *6 (D.Neb. Mar. 19, 2008). Likewise, the Supreme Court of Illinois best defined the "reasonable expectation" test: "The reasonable expectation test provides that, regardless whether a substance in a food product is natural to an ingredient thereof, liability will lie for injuries caused by the substance where the consumer of the product would not reasonably have expected to find the substance in the product." *Jackson v. Nestle–Beich, Inc.*, 147 Ill.2d 408, 168 Ill.Dec. 147, 589 N.E.2d 547, 548 (1992).

[¶ 13] We have previously noted that Maine's strict liability statute [7] was fash-

ioned after the Restatement (Second) of Torts § 402A (1965).[8] *Adams v. Buffalo Forge Co.*, 443 A.2d 932, 940 (Me.1982) ("The Legislature formulated our strict liability statute, 14 M.R.S.A. § 221, directly from section 402A of the *Restatement (Second) of Torts* (1965)."). The Restatement comments define "[d]efective condition" as a product that is "in a condition not contemplated by the ultimate consumer." Restatement (Second) of Torts § 402A cmt. g. The comments also define "[u]nreasonably dangerous": "The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." *Id.* cmt. i.

■ [¶ 14] These comments to the Restatement are consistent with the "reasonable expectation" test. Both the Restatement and the test consider the condition of the product as it compares to the ordinary consumer's reasonable expectation for that product. *See, e.g., Matthews v. Campbell Soup Co.*, 380 F.Supp. 1061, 1065 (S.D.Tex. 1974) ("It is obvious that the 'reasonable expectation' approach is considerably more compatible and consistent with [s]ection 402A which has been adopted as the law of Texas in product liability cases.").[9]

■ [¶ 15] With this framework in mind, we adopt the "reasonable expectation" test in Maine, to be used in strict liability cases alleging a defective food product pursuant to section 221. We conclude that, in enacting section 221, the Legislature intended to align itself with the Restatement's objectives, and therefore the Legislature intended the "reasonable expectation" test to be used in applying the language of section 221.

7. Maine's strict liability statute states:

One who sells any goods or products in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to a person whom the manufacturer, seller or supplier might reasonably have expected to use, consume or be affected by the goods, or to his property, if the seller is engaged in the business of selling such a product and it is expected to and does reach the user or consumer without significant change in the condition in which it is sold. This section applies although the seller has exercised all possible care in the preparation and sale of his product and the user or consumer has not bought the product from or entered into any contractual relation with the seller.

14 M.R.S. § 221 (2011).

8. Section 402A states:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

Restatement (Second) of Torts § 402A (1965).

9. Many other courts also prefer the "reasonable expectation" test to the "foreign-natural" doctrine. *See, e.g., Porteous v. St. Ann's Cafe & Deli*, 713 So.2d 454, 456 & n. 3 (La.1998); *Phillips v. Town of W. Springfield*, 405 Mass. 411, 540 N.E.2d 1331, 1332–33 (1989); *Yong Cha Hong v. Marriott Corp.*, 656 F.Supp. 445, 448 (D.Md.1987); *Ex parte Morrison's Cafeteria of Montgomery, Inc.*, 431 So.2d 975, 978–79 (Ala.1983); *Hochberg v. O'Donnell's Rest., Inc.*, 272 A.2d 846, 848–49 (D.C.1971).

## B. Genuine Dispute as to Material Facts

[¶ 16] With the proper test for evaluating the Estate's strict liability claim established, we can now turn our attention to whether the Estate presented enough evidence to create a genuine issue of material fact, and therefore survive summary judgment and proceed to trial. We conclude that the Estate did present sufficient evidence to create a genuine issue of material fact and to establish a prima facie case for products liability. *See Wentworth,* 2003 ME 97, ¶ 9, 829 A.2d 520.

[¶ 17] The Estate presented evidence that creates a genuine issue of material fact as to whether the turkey product caused Pinkham's injury. Stern testified that he believed that the injury was a "perforation secondary to a foreign body." He opined that even if Pinkham had a pre-existing condition making him more susceptible to an esophageal injury, a second factor—such as a foreign body, retching, or vomiting—would still most likely need to be present to cause Pinkham's injury. The record demonstrates that the "foreign body" was either a small piece of bone or cartilage, or a larger piece of bone. There is direct evidence of the presence of the smaller pieces of bone or cartilage: Stern actually saw them. There is no direct evidence of a larger piece of bone, but the summary judgment record does contain indirect evidence that a larger piece of bone could have been present in the turkey product Pinkham consumed, but may have passed, undetected, from Pinkham's throat. The indirect evidence is found in the deposition of a Dysart's employee, who testified that larger pieces of bone had regularly [10] been discovered in Cargill's "boneless" turkey product in the past, and in the expert deposition testimony of John F. Erkkinen, M.D., who acknowledged that a larger bone piece could have passed through Pinkham's esophagus and into his stomach.

[¶ 18] Whether a consumer would reasonably expect to find a particular item in a food product is normally a question of fact that is left to a jury. *See Matthews,* 380 F.Supp. at 1066. The Superior Court noted this, but nonetheless decided that a food bolus containing one-to-two-millimeter bone fragments is not defective as a matter of law. In making this determination, the court erred. The question of whether a consumer would reasonably expect to find a turkey bone or a bone fragment large and/or sharp enough to cause an esophageal perforation in a "boneless" turkey product is one best left to the fact-finder. At trial, the jury will have an opportunity to determine whether a foreign body in the turkey product caused Pinkham's injury, what the foreign body was, and whether Cargill is liable as a result.

## C. Inference of Defect

[¶ 19] The Restatement (Third) of Torts: Products Liability § 3 [11] provides for the possibility of an inference that the product was defective in the absence of a

---

10. He testified that bones were found once or twice each month.

11. Section 3 of the Restatement provides:
    It may be inferred that the harm sustained by the plaintiff was caused by a product defect existing at the time of sale or distribution, without proof of a specific defect, when the incident that harmed the plaintiff:

    (a) was of a kind that ordinarily occurs as a result of product defect; and
    (b) was not, in the particular case, solely the result of causes other than product defect existing at the time of sale or distribution.
    Restatement (Third) of Torts: Prods. Liab. § 3 (1998).

known specific defect. Once again, we are faced with a Restatement provision that we have not explicitly adopted. The United States District Court for the District of Maine has twice inferred that we would adopt this provision when given the opportunity. *Moores v. Sunbeam Prods., Inc.*, 425 F.Supp.2d 151, 156 (D.Me.2006) ("Sunbeam concedes, probably wisely, that Maine law incorporates section 3 of the Restatement (Third) of Products Liability...."); *TNT Rd. Co. v. Sterling Truck Corp.*, No. 03–37–B–K, 2004 WL 1626254, at *5–6, 2004 U.S. Dist. LEXIS 13461, at *16–19 (D.Me. July 19, 2004). We acknowledge the accuracy of the District Court's prediction and hold that, on remand, the Estate may seek recovery pursuant to this provision.

[¶ 20] Whether there is proof that an injury was not "solely the result of causes other than [a] product defect existing at the time of sale or distribution," Restatement (Third) of Torts: Prods. Liab. § 3(b),[12] is a question of fact for a jury to decide. Even without proof of a specific defect, there is evidence that could lead to the inference that the turkey product was defective. Stern opined that dysphagia or bad reflux alone would not cause an esophageal perforation; he stated that something else most likely would have to occur such as aggressive retching or vomiting, or the presence of a foreign body. Because Cargill offered no evidence that aggressive retching or vomiting occurred, the only other likely cause of Pinkham's esophageal perforation was a foreign body in the food that Pinkham digested. Cargill does have evidence that Pinkham had been complaining of difficulty swallowing in the weeks before he ate the turkey sandwich,

and it may be successful in preventing the Estate from establishing that the injury occurred as a result of a defect in its turkey product. Given the record presented at summary judgment, however, Pinkham's estate is entitled to the opportunity to have a fact-finder decide whether it should receive the benefit of the inference.

[¶ 21] Under these facts, section 3(b) of the Restatement permits the inference that the harm sustained by Pinkham was caused by a product defect and that the injury sustained was of a kind that ordinarily occurs as a result of a product defect and was not solely the result of causes other than the defect.

D. Hearsay Evidence

[¶ 22] Through the testimony of Stern, Erkkinen, and the Dysart's employee, the Estate has presented sufficient evidence to make its prima facie case at the summary judgment stage; therefore, we do not consider the Estate's arguments concerning the admissibility of the two excluded affidavits and Pinkham's statements to the insurance adjuster.

III. CONCLUSION

[¶ 23] Because the Estate has presented enough evidence to create a genuine issue of material fact as to whether a defective turkey product caused Pinkham's injury, we vacate the summary judgment. In doing so, we adopt the "reasonable expectation" test as a means to determine whether Cargill's turkey product was defective pursuant to section 221. Also, even without proof of a specific defect, the Re-

12. Section 3(a) requires that the injury be "of a kind that ordinarily occurs as a result of product defect." Because neither party offered evidence relating to this requirement at the summary judgment stage, it is not relevant to our decision.

statement (Third) of Torts: Products Liability § 3 allows for an inference that a product may be defective in certain circumstances.

The entry is:

Judgment vacated. Remanded for further proceedings consistent with this opinion.