STATE OF MAINE                          SUPERIOR COURT
ANDROSCOGGIN, ss.                       CIVIL ACTION
                                        DOCKET NO. CV-11-47
                                        MGK - AND - 3/25/2013

CHRIS GUERIN, a resident of the
Town of Monmouth, County of
Kennebec, State of Maine,
        Plaintiff

FILED PUBSC 03/25/13

v.

BRIGGS & STRATTON POWER                 JUDGMENT
PRODUCTS GROUP, LLC, a Delaware
corporation with a principal place of
business in Jefferson, Wisconsin,

and

LOWE'S HOME CENTERS, INC., a
North Carolina corporation with a
place of business in the City of Auburn,
County of Androscoggin, State of Maine,
        Defendants

Plaintiff Chris Guerin brought a products liability claim against the manufacturer (Briggs & Stratton Power Products Group, LLC ("Briggs & Stratton), and the seller (Lowe's Home Centers, Inc. (Lowe's)) of a portable generator that he purchased in February 2008 and that he claims caused personal injuries. He alleges breach of Implied Warranty, Strict Liability and Negligence. A bench trial was held on October 29 and 30, 2012. In lieu of closing arguments, the Court received the parties' written arguments on December 7, 2012.

At trial, the Court heard from Plaintiff and his witnesses, Christopher Curtis of Jay, Wendy Parent of Sabattus and, David Dodge, a Safety Engineer and Consultant. The Court also heard from Gregory Marchand of Waukeshan, Wisconsin, Product Safety and Compliance Manager and corporate representative for Briggs & Stratton.[1] In addition to the sworn testimony,

---

[1] Upon consideration of Plaintiff's renewed objection to the Court's ruling allowing Mr. Marchand's expert testimony to include his conversations and email exchanges with the Chinese supplier of the handles used in the manufacture of the generator, the Court concludes that the conversations and email exchanges shall not be considered for the truth of the matter asserted but as the basis for informing Mr. Marchand's expert opinion regarding the manufacture and assembly of the handle and grip. With regard to

1

numerous exhibits, including but not limited to the design specifications for the generator handle and grip, pictures of Plaintiff's garage and Plaintiff's medical records, were also received into evidence. The generator was also presented for demonstrative purposes.

Plaintiff concedes that the evidence shows Briggs & Stratton did not install the grips onto the handles, but rather purchased the entire handle assembly from a Chinese company that purchased the handle assembly from another Chinese company. Accordingly, the Court grants judgment for the Defendants on Count 3 of Plaintiff's complaint. As to Counts 1 and 2, and for the reasons set forth below, the Court grants judgment for the Plaintiff Chris Guerin.

**Findings**

The parties' stipulated that Briggs & Stratton manufactured the generator in Jefferson, Wisconsin; Briggs & Stratton sold the generator to Lowe's; and, Chris Guerin purchased the generator from Lowe's on February 14, 2008.

Plaintiff testified that when he purchased the generator it was in a sealed box. He brought the boxed generator to his home in Monmouth. He unpacked and assembled the generator according to the manufacturer's instructions. The handles used to move the generator by pushing or pulling came with the grips attached and did not require further assembly. Plaintiff was able to start up the generator without incident. It was stored under a stairway platform in the corner of his garage.

From the date of purchase to the date of Plaintiff's injury, August 14, 2009, Plaintiff never used the generator but did start it periodically. The generator never left his possession. It was in the same condition on August 14, 2009 as the day he bought and assembled it.

On August 15, 2009, Plaintiff was hosting an annual family reunion – a "pig roast"- for 75 or more of his family and friends. It was scheduled to begin at

---

Mr. Marchand's testimony about the General Performance Audit (Plaintiff's Exhibit 33) and the Product Safety Audit Summary (Plaintiff's Exhibit 34), Mr. Marchand testified that in his capacity as Briggs & Stratton's Product Safety and Compliance Manager and as their corporate representative, he has knowledge of and access to the company's records of regularly conducted business. Mr. Marchand testified, "The generator in this case was developed on [his] watch." Accordingly, the Court finds that these documents (as well as the other Briggs & Stratton business records) fall within Rule 803(6) of the Maine Rules of Evidence. Mr. Marchand's testimony and the documents are admissible.

noon and go until the party ended. The guests were encouraged to bring campers and tents and to stay over night.

Several of Plaintiff's friends came over the evening before on Friday, August 14, to help with food preparation and to set up two 20'X20' tents, a 30'X30' tent and a couple of "easy ups." During the course of that evening, some people consumed a few beers but most did not, including the Plaintiff.[2]

At around 10:00 or 11:00 that night, the power went out. Plaintiff, Christopher Curtis and another friend went to the garage to get the generator. The garage is a separate 30' x 32' building that is about 50 to 60 feet from the house. They used flashlights and/or their cell phones to light the way.

When they got to the garage, they had to move some things out of the way to clear a path so Plaintiff could pull the generator out from under the stairway platform. Once it was out from under the stairs, Plaintiff turned his back to the generator and started to pull it behind him as he walked the 30' across the garage floor to get it outside.[3] Christopher Curtis walked beside Plaintiff to light the way.

There is a 2" lip from the garage floor to the unpaved driveway. Plaintiff had to lift up on the generator to keep it from hitting the lip. When he pulled up on the handles, he felt the grip slip or slide on the handle and he lost control of the generator – he could not hold it up - and it fell with the bottom of the support leg striking and lacerating his left heel.[4] He yelled out in pain and his friends helped him into the house.[5]

---

[2] Defendants endeavored to show that Plaintiff was drinking the night before the "pig roast" and argues that his injury "was more likely caused by an alcohol-induced mishap..." Defendants assert that there are significant inconsistencies in Plaintiff's testimony regarding his "use of alcohol, both historic and on the night he was injured." Defendants highlighted these inconsistencies for the Court at trial and in written argument. The Court has considered and weighed the effect of these inconsistencies and finds them to be generally insignificant and/or irrelevant to the facts and issues presented in this case. The Court bases this finding on the testimony of Plaintiff and his fact witnesses, whom the Court finds credible, and Plaintiff's medical records.

[3] Defendants' expert testified, "Pushing or pulling the generator is OK. It is designed to work either way."

[4] Defendants also highlighted at trial and in written argument, "a number of inconsistencies surrounding the circumstances of the accident". The Court has considered and weighed the effect of these "inconsistencies" and finds them to be generally insignificant and/or irrelevant to the question of whether the grip or grips slipped or slid, causing Plaintiff to lose his hold on the generator so that it fell down

As the Plaintiff was being attended to in the house, Christopher Curtis went back outside to get the generator. When he looked at it, he saw that the grip on one of the handles was "tipped up" and he had to pound it back on before he moved it.

### Discussion – Strict Liability

Maine's strict liability statute provides that:

One who sells any goods or products in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to a person whom the manufacturer, seller or supplier might reasonably have expected to use, consume or be affected by the goods, or to his property, if the seller is engaged in the business of selling such a product and it is expected to and does reach the user or consumer without significant change in the condition in which it is sold. This section applies although the seller has exercised all possible care in the preparation and sale of his product and the user or consumer has not bought the product from or entered into any contractual relation with the seller.
14 M.R.S. §221.

The statute "places an obligation on manufacturers and suppliers to market reasonably safe products," and allows that "a plaintiff may recover for injuries resulting from an unreasonably dangerous, defective product without having to prove negligence on the part of the defendant in preparing or selling that product." *Austin v. Raybestos-Manhattan, Inc.*, 471 A.2d 280, 282-283, 288 (Me. 1984).

Based on the parties' stipulation, there is no dispute that Defendants are engaged in the business of manufacturing and selling generators and that Plaintiff is a user or consumer the generator is expected to and did reach.

It is the Plaintiff's burden to show that the generator was "in a defective condition unreasonably dangerous to the user or consumer," that it was expected to and did reach "the user or consumer without significant change in the condition in which it was sold," and that the product caused the Plaintiffs'

---

onto his ankle. The Plaintiff and his witnesses Christopher Curtis and David Dodge presented sufficient and credible testimony for the Court to make this finding.

[5] At trial, Plaintiff demonstrated how he was standing with his back to the generator. Before reenacting how he lifted up on the handles, he made sure the grips were fully inserted by pushing on them. While the grips did not slip or slide during the demonstration, the lifting motion caused the generator to move closer to his heel and almost ride up onto it.

4

injuries. *Fuller v. Central Maine Power Co.*, 598 A.2d 457, 460 (Me. 1991) (quotation omitted).

A condition is defective and unreasonably dangerous if it is "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics. *Estate of Pinkham v. Cargill, Inc.*, 2012 ME 85, ¶ 13, 55 A.3d 1 (quoting RESTATEMENT 2D OF TORTS § 402A cmt. i). For a change to qualify as "significant" – so as to bar a manufacturer's liability – it must relate to the essential features and safety of the product, it must be an intervening proximate cause that the manufacturer could not have foreseen. *Marois v. Paper Converting Machine, Co.*, 359 A.2d 621 (Me. 1988).

Plaintiff's Exhibit 12 is a Briggs & Stratton proprietary illustration of the handle and grip that is used in the manufacture of the generator. It is dated 9/14/05 and provides the instruction: "Grip to be pressed fully onto tube."

Plaintiff's expert witness, David Dodge, testified at length about how much force would be required to move the grip at various points on the handle. Among other things, there was disagreement as to the information he received from the Plaintiff, the tools he used to measure force amounts, as well as his understanding of how the handles and grips were manufactured and assembled.

Despite these areas of disagreement and differences of opinion, there was no dispute that if the grips were inserted to their full length onto the handles, the grips would not slip. Similarly, if the grips were not inserted to their full length onto the handles, they could indeed slip.

Plaintiff testified that he had to lift up on the generator to keep it from hitting the lip of the garage floor as he moved it onto the dirt driveway. When he pulled up on the handles, he felt the grip slip or slide on the handle. He lost control of the generator – he could not hold it up - and it fell with the bottom of the support leg striking and lacerating his left heel. After helping Plaintiff into the house, Christopher Curtis went back outside to get the generator. He testified that when he looked at the generator, he saw that the grip on one of the handles was "tipped up" and he had to pound it back on before he moved it. The testimony provided by Plaintiff and Christopher Curtis was credible and persuasive.

5

Defendants' expert witness, Gregory Marchand, is Briggs & Stratton's Product Safety and Compliance Manager. He works with the engineers in the design, development and safety of products. He testified, "The generator in this case was developed on [his] watch." When asked his opinion as to whether the subject generator is defective as manufactured or when sold, he stated, "It is not." He further opined, "The grips could not have slipped if used as manufactured."

Mr. Marchand testified in detail as to why the generator was not defective and unreasonably dangerous when sold. He explained that the generator, including the handle-grip assembly, underwent a series of quality control measures before being sold, including: inspection by the handle-grip assembly manufacturer;[6] "line inspection" by Briggs & Stratton assembly line personnel; "line inspection" by Briggs & Stratton Quality Department; Briggs & Stratton Quality Station inspection; and Briggs & Stratton Quality Finished Product Audit.

On direct examination, Mr. Marchand's description of Briggs & Stratton's quality control measures was impressive. On cross-examination, however, Mr. Marchand allowed that only three general performance audits (Plaintiff's Exhibit 33) were produced. In each of those audits, a boxed generator was selected at random and opened. The "Perfomance/Functional Defects ad Misc. Comments" from November 11, 2005, included: "cordset doesn't fit inside carton;" and, from December 5, 2005: the "handles leave dimples in the bottom of the carton when the unit is removed." In the line and station audits, the generator is not removed from the box – but there is someone who "look[s] at [the handle-grip assembly]." Mr. Marchand also produced a Product Safety Audit Summary dated 2/3/2006 (Plaintiff's Exhibit 34). He testified that only one such audit was performed and that the handle and grip assembly is not listed as a separate item to be inspected but is, instead, included in the "controls" section of the summary.

---

[6] Mr. Marchand conceded, however, that he has no personal knowledge of how the grip is applied to the handle or what the inspection consists of because the handle and grip are made overseas and preassembled. His testimony was based on the research he did for this case.

While Briggs & Stratton's quality and control measures appear to provide opportunity to detect possible defects in the generators they manufacture, the evidence also suggests that, at least with regard to the handle-grip assembly, it is not full proof.

Based on the foregoing, the Court finds that the Briggs & Stratton handle assembly design requires each "grip to be pressed fully on [the handle] tube." In this case, the Court finds that Plaintiff has proved that it is more likely than not that the grip was not pressed fully on the handle. The failure to fully apply the grip onto the handle increased the potential for the grip to slip or slide. It is more likely than not that the grip did slip or slide, causing Plaintiff to lose control of the generator and it fell with the bottom of the support leg striking and lacerating his left heel. The defect in the handle and grip assembly on this generator made use of the generator unreasonably dangerous to the user. Evidence presented by the Defendants acknowledged that the manufacturer of a portable generator would expect the generator to be pushed or pulled by the grips on the handles. An ordinary user of a portable generator would not contemplate that the grip on a preassembled handle would slip or slide while using the generator as expected.

The Court finds that the Plaintiff established by a preponderance of the evidence that on the day of his injury there was no significant change in the condition of the generator from the condition it was in when sold. When he purchased the generator it was in a sealed box. He unpacked and assembled it according to the manufacturer's instructions. The grips were already attached to the handles and did not require further assembly. The generator was stored inside his garage and he only started it on occasion. It was in the same condition as the day he bought and assembled it.

Having satisfied his burden on Count 1 – strict liability, the Court finds in favor of Plaintiff.

**Implied Warranty**

Under Maine's Uniform Commercial Code, "a warranty that . . . goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." 11 M.R.S.A. § 2-314(1). To qualify, goods must "pass without objection in the trade under the contract description,"

7

id. § 2-314(2)(a), and be "fit for the ordinary purposes for which such goods are used," id. § 2-314(2)(c). See also *Lorfano v. Dura Stone Steps, Inc.*, 569 A.2d 195, 197 (Me. 1990).

For the reasons discussed above regarding the generator's defect, Lowe's breached its implied warranty of merchantability. A generator with improperly applied grips cannot pass "without objection in the trade under the contract description" and was not "fit for the ordinary purposes for which [generators] are used."

Also for the reasons stated above, Briggs & Stratton, by selling the defective generator to Lowe's, is also liable to Plaintiff because he is a person whom Briggs & Stratton "might reasonably have expected to use, consume or be affected by the [generator]." 11 M.R.S. §2-318.

Having satisfied his burden on Count 2 – Implied Warranty, the Court finds in favor of Plaintiff.

**Damages**

There is no dispute that Plaintiff's Achilles heel injury was caused by the generator incident.

Evidence of Plaintiff's certified medical records – including all treatment related to the incident and medical bills incurred in the amount of $14,508.14 - was admitted without objection.

Evidence of Plaintiff's ongoing treatment and physical therapy from October 20, 2009 through February 4, 2010 was admitted without objection.

Evidence of the difficulties Plaintiff has gone through since his injury, as well as evidence that he continues to experience occasional discomfort with his Achilles tendon was presented without objection; and,

Evidence that Plaintiff has a significant surgical scar on his left heel was admitted without objection.

The Court finds that the damages Plaintiff, Chris Guerin, sustained as the result of the defect in the generator manufactured by Briggs & Stratton and sold by Lowe's include the following:

**Medical Expenses**

To compensate the Plaintiff for the reasonable value of medical services including examination and care by doctors and other medical personnel, hospital care and treatment, medicine and other medical supplies shown by the evidence to have been reasonably required and actually used in treatment and care of the Plaintiff, the Court awards Plaintiff:                                     **$14,508.14**

**Pain and suffering, mental anguish and loss of enjoyment of life**

To compensate Plaintiff for the pain, suffering, and mental anguish already suffered and, for the pain, suffering and mental anguish that the Court finds Plaintiff is reasonably certain to suffer in the future, the Court awards Plaintiff:                                     **$57,000.00**

**Permanent scarring**

The Court awards Plaintiff                                     **$3,500.00**

**Total damages:**                                     **$75,008.14**

The Clerk is directed to incorporate this Order by reference on the docket pursuant to M.R.Civ.P. 79(a), and the entry is:

**Judgment for Defendants on Count 3.**
**Judgment for Plaintiff on Counts 1 and 2 in the total amount of**
**Seventy-Five Thousand Eight Dollars and Fourteen Cents ($75,008.14).**

_March 25, 2013_
DATE

_M. Kennedy_
SUPERIOR COURT JUSTICE

9

CHRIS D GUERIN  - PLAINTIFF

Attorney for: CHRIS D GUERIN
ANTHONY FERGUSON  - RETAINED
FALES & FALES PA
192 LISBON STREET
PO BOX 889
LEWISTON ME 04243-0889


vs
BRIGGS & STRATTON POWER PRODUCTS GROUP LLC - DEFENDANT

Attorney for: BRIGGS & STRATTON POWER PRODUCTS GROUP LLC
NEAL PRATT  - RETAINED 04/27/2011
EATON PEABODY
167 PARK ROW
PO BOX 9
BRUNSWICK ME 04011-0009


LOWE'S HOME CENTERS INC - DEFENDANT

Attorney for: LOWE'S HOME CENTERS INC
NEAL PRATT  - RETAINED 04/27/2011
EATON PEABODY
167 PARK ROW
PO BOX 9
BRUNSWICK ME 04011-0009

SUPERIOR COURT
ANDROSCOGGIN, ss.
Docket No  AUBSC-CV-2011-00047


DOCKET RECORD

Filing Document: COMPLAINT                    Minor Case Type: PRODUCT LIABILITY
Filing Date: 03/09/2011

## Docket Events:

03/09/2011 FILING DOCUMENT - COMPLAINT FILED ON 03/09/2011

03/09/2011 Party(s):  CHRIS D GUERIN
           ATTORNEY - RETAINED ENTERED ON 03/09/2011
           Plaintiff's Attorney: ANTHONY FERGUSON

04/07/2011 Party(s):  LOWE'S HOME CENTERS INC
           SUMMONS/SERVICE - CIVIL SUMMONS SERVED ON 03/29/2011
           THROUGH CORPORATION SERVICE

04/07/2011 Party(s):  LOWE'S HOME CENTERS INC
           SUMMONS/SERVICE - CIVIL SUMMONS FILED ON 04/07/2011

04/07/2011 Party(s):  LOWE'S HOME CENTERS INC
           SUMMONS/SERVICE - ACK OF RECEIPT OF SUMM/COMP SERVED ON 04/01/2011
           THROUGH NEAL PRATT, ESQ.

04/07/2011 Party(s):  LOWE'S HOME CENTERS INC
           SUMMONS/SERVICE - ACK OF RECEIPT OF SUMM/COMP FILED ON 04/07/2011

04/27/2011 Party(s):  BRIGGS & STRATTON POWER PRODUCTS GROUP LLC,LOWE'S HOME CENTERS INC
           MOTION - MOTION FOR LATE ANSWER FILED ON 04/22/2011