Circulated 04/21/2023 05:24 PM

**IN THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY, PA**
**CIVIL DIVISION –LAW**

BT MANAGEMENT, LCC : No. C-48-CV-2014-03772
          Plaintiff :

   VS :

7065-A WILLIAM PENN HIGHWAY, LLC :
          Defendant :

FILED 2022 MAY 26 P 1:

## PENNSYLVANIA RULE OF APPELLATE PROCEDURE 1925(a) MEMORANDUM OPINION

The parties are limited liability companies. Plaintiff BT Management, LLC, is apparently owned and controlled by its managing member, Dr. Bruce Thaler. We were informed by counsel that Dr. Thaler was a practicing dentist, with his office and residence located in the Altoona, Pennsylvania area. Counsel represented that Dr. Thaler also engaged in commercial real estate and development as a second business interest. We were also informed that Defendant 7065-A WILLIAM PENN HIGHWAY, LLC was principally owned by Edwin and Kathryn Novak, an elderly couple who had a history of investing in real estate. Mr. Novak was the managing member of the Defendant LLC until his death in 2019. Mrs. Novak is now the managing member of Defendant.

The triggering Order which brings about this appeal was dated February 14, 2022 and docketed on February 15, 2022. In that Order we entered a nonsuit for the failure of Plaintiff to present any evidence during

1

the trial which concluded on September 21, 2020. The February 14, 2022 Order was entered after remand from the Superior Court.

On February 24, 2022, Plaintiff filed a motion for post-trial relief asserting that our entry of a non-suit was (apparently) an abuse of discretion.

On March 21, 2022, we filed an Order with a Statement of Reasons denying Plaintiff's post-trial motion.

On April 18, 2022, Plaintiff filed a Notice of Appeal to a series of interim orders entered under this docket number, specifically orders cited in the notice of Appeal are dated July 9, 2029, July 22, 2019, July 15, 2020, September 21, 2022, September 22, 2020, and March 21, 2022. However, we believe that the Plaintiff has misidentified by date some of the orders under appeal as there were no Orders entered on July 22, 2019 or July 15. 2020. One of the targeted orders should have been designated as July 22, 2020. Finally, Plaintiff did not list the February 14, 2022 Order in which we entered the nonsuit.

On April 28, 2022 we requested a 1925(b) statement of matters complained of on appeal.

On May 18, 2022, Defendant filed his Statement of matters Complained of on Appeal.

However, in an effort to give context to this dispute, we must provide a summary of the factual history to this dispute.

2

This matter involves a failed real estate development project regarding a parcel of land located at, and known as, 7065-A William Penn Highway, Easton, Pennsylvania (hereinafter referred to as "the property"). In 2011, the parties entered into the first of three purported contracts for the sale of three separate parcels that were to be carved out of the property, with the intended purpose of erecting commercial buildings on each parcel. The parties refer to the separate parcels as the "Sheetz Pad," the "Embassy Pad," and the "McDonalds Pad," respectively. Later, Plaintiff alleges that Defendant agreed to provide an option for a fourth, unidentified parcel from the subdivision.

Apparently, for a considerable time, the parties discussed and cooperated with the subdivision process. However, it is also apparent that the parties' relationship deteriorated; and, the eventual failure to obtain subdivision approval generated this lawsuit.

On April 24, 2014, Plaintiff BT Management, LLC ("BTM") filed a Complaint against WPH and asserted eight claims: Count I - Breach of Contract seeking Specific Performance regarding Amended Sheetz Pad Agreement of Sale dated July 3, 2012; Count II - Breach of Contract seeking Money Damages regarding both original Sheetz Pad Agreement of Sale dated July 6, 2011 and the Amended Sheetz Pad Agreement of Sale dated July 3, 2012); Count III - Breach of Contract seeking Specific Performance regarding Embassy Pad Agreement of Sale dated April 23, 2012; Count IV -

3

Breach of Contract seeking Money Damages regarding Embassy Pad Agreement of Sale dated April 23, 2012; Count V - Breach of Contract seeking Specific Performance regarding McDonald's Pad Agreement of Sale dated March 12, 2013; Count VI - Breach of Contract seeking Money Damages regarding McDonald's Pad Agreement of Sale dated March 12, 2013; Count VII Breach of Contract seeking Specific Performance for First Ratification Agreement (unwritten and undated); Count VIII") - Breach of Contract seeking Specific Performance regarding Second Ratification Agreement (unwritten and undated). See Complaint at 14-20.

We should note that the Agreements referred to as the original Sheetz Pad dated July 6, 2011 and the Embassy Pad dated April 23, 2012 were signed by Mr. Thaler and Mr. Novak; however, the Amended Sheetz Pad agreement and the McDonald's Pad agreement were signed by Mr. Thaler and a person known as Lou Pektor, III. Mr. Pektor is apparently a local developer who at various points may have acted as mediator or a "go-between" the parties, but was unrelated to Defendant 7065-A William Penn Highway, LLC, as Mr. Pektor was not an owner, managing member, or employee of Defendant.

We also note that the alleged "Ratification Agreements" were not written or signed by either of the parties. The First Ratification Agreement was alleged to be captured in a series of emails between third parties. See Complaint pp. 12 -13 and Exhibit 5. The Second Ratification Agreement was

allegedly discussed in a conference call. See Complaint at 13 – 14. Further, based upon the allegations in the complaint "... Novak, again refused to ratify the three existing Agreements of Sale or sign the amendments on behalf of Defendant 7065-A..." See Complaint ¶ 75. In fact, "Novak demanded further concessions...." See Complaint ¶ 77.

On July 9, 2019, Judge McFadden dismissed BTM's specific performance claims, or Counts I, III, V, VII, and VIII, on the grounds that BTM could not prove an adequate description of the properties it sought to be conveyed through specific performance. See Order of Court, July 9, 2019. Thus, only Counts II, IV, and VI for money damages remained in the instant case.

Judge McFadden placed this matter onto the December 2019 jury trial list. However, the matter was continued from the December list to the March 2020 jury trial list. In the interim, Judge McFadden retired from the bench.

On February 11, 2020, the President Judge reassigned the above-captioned matter to the undersigned.

We scheduled a March 4, 2020 pretrial conference with counsel. During the pretrial conference, Defendant's counsel indicated there were several outstanding pretrial issues that needed to be addressed related to the failure of Plaintiff to identify any expert witness on damages and a dispositive Motion in Limine, which Defendant intended to file on the

5

morning of trial seeking to preclude the remaining causes of action. In response, counsel for Plaintiff indicated that they did not intend to call an expert witness to address damages, that damages would be addressed by the BT's managing agent, Bruce Thaler. Dr. Thaler is both a dentist and a land developer. As far as the anticipated dispositive Motion, we suggested a continuance of the March 9, 2020 trial and allow the Defendant to pursue a motion for summary judgment, so that we would have an opportunity to properly analyze the issues.

Ultimately, on March 9, 2020, we entered an Order with the agreement of Plaintiff and the reluctant agreement of Defendant, who voiced significant frustration over the fact that the case had been languishing for such a long time. In our Order, we directed that the parties file any additional motions for summary judgment and/or motions in limine to preclude testimony no later than April 23, 2020; argument on the dispositive motions was set for May 26, 2020; we required the parties to refine their pretrial statements with regard to the identification of witnesses; and we rescheduled the trial for the Civil Jury Term of September 21, 2020, with warning to the parties that we expected that we would grant no further continuances absent exigent circumstances. Our order also directed counsel meet to review the deposition of Edwin G. Novak, the managing agent for Defendant LLC, who sat for a deposition but had since died. We

6

required counsel to identify any objections to the admission of Mr. Novak's deposition with regard to the "dead man's rule".

Shortly after our March 9, 2020 conference, Northampton County was briefly shut down for jury trials by the Administrative Order of the President Judge due to the COVID 19 Emergency. The suspension of jury trials included the months of March through June 2020.

On April 28, 2020, Defendant filed for summary judgment seeking the dismissal of the remaining counts. The matter was set for Argument on May 26, 2020. Thereafter, Defendant filed a reply brief on June 8, 2020.

On June 8, 2020, the President Judge entered an Administrative Order opening up jury trials in Northampton County beginning in July 2020. The Order provided for significant COVID-19 safety protocols, including masking of all participants and appropriate social distancing including the jurors throughout jury selection and trial.

In the interim, counsel timely file

On July 15, 2020, we entered an order granting Defendants' Motion to Preclude Expert Testimony on the issue of damages and we granted partial summary judgment dismissing Counts IV and VI of Plaintiff's Complaint, as both contracts purported to convey real estate, but the owner of the real estate did not sign either contract. Thus, we allowed only Count II – Breach of Contract for Money Damages related to the lot identified as the anticipated location for a Sheetz Gas Station/Convenience Store to go to

trial. We also precluded the admission of hearsay documents and opinion testimony from alleged fact witnesses – a realtor and an accountant – with regard to the issue of Plaintiff's money damages. The realtor and accountant were never identified as expert witnesses, not did either author a report. Further, neither proffered witness had direct involvement with the underlying dispute.

Interestingly, Plaintiff's theory for liability was that the Defendant LLC intentionally subverted the approval process to defeat the sale of the lot to Plaintiff, by deficient effort or intentional lack of effort, which constituted breach of contract. It appeared to be a convoluted and difficult burden to prove the breach, but on its face the claim could possibly be meritorious. An additional burden of proof issue existed as Plaintiff did not identify or provide a report from an expert witness to address either liability or money damages. Plaintiff's sole witness on the issues of liability and money damages was the managing member of BT Management, LLC, Dr. Bruce Thaler. Further, based upon counsels' representation, the Township representatives were expected to be called by the Defendant to establish the action taken by the township to deny subdivision approval. Thus, it appeared to be a short trial, with very limited testimony by Plaintiff.

Docket/judicial activity was dormant from July 15, 2020 until September 8, 2020, when we received a letter faxed to our judicial office

from counsel for Plaintiff alleging that Dr. Thaler was requesting a continuance due to his concerns over contracting COVID-19. Counsel did not file a motion or provide a continuance form as required by Northampton County Local Rules, which form required a signed response by opposing counsel. The letter asserted various facts not of record and directly asked the Court to take action by granting relief. The request was off the record and wholly improper as ex-parte communication (even though the letter noted that a copy was sent to opposing counsel, providing a copy to counsel did not excuse the impropriety of the communication).

In reaction to the letter and because this was a major case assignment scheduled for trial, we immediately conducted a telephone conference with counsel. Defense counsel vociferously objected to the continuance request indicating that his clients were elderly and had the same concerns regarding Covid exposure as Plaintiff; further, Defendant's counsel asserted prejudice to his elderly client who needed closure to this long drawn out dispute related to resolving her financial situation in order to plan for the distribution of her estate. Therefore, counsel argued that the continuance was prejudicial to his client.

In response to Dr. Thaler's concern, we indicated to counsel that Northampton County was very protective with regard to its COVID-19 protocols. We further noted that everyone who would be involved in this

9

trial shared the same concerns as Dr. Thaler regarding Covid exposure, including the parties, counsel, the court, all courtroom and courthouse staff, and perhaps most importantly all jurors who were summoned to the courthouse to participate in this trial. We also assured Plaintiff's counsel that we would endeavor to accommodate Dr. Thaler by limiting his social contacts at the Courthouse. Plaintiff's counsel seemed satisfied with our assurances.

On Friday prior to Monday's jury selection, September 18, 2020, counsel appeared before the undersigned for a final conference. At that time, Plaintiff's counsel presented a formal motion for continuance, which counsel styled as a "renewed" request for continuance with a proposed order. We note that the motion referenced Dr. Thaler's concern for his adult children, referenced as aged 28 (Mark) and 31 (Brittany). We briefly inquired and learned from counsel that Dr. Thaler's children hold advanced educational degrees and are professionally employed. No reference was made as to where Dr. Thaler's adult children live or their marital status. The Motion also attached as an exhibit a letter dated September 17, 2022 which was written by Aimee Lestrange, CPNP, bearing a MedStar Health letterhead and a street address in Washington D.C. The letter was addressed to Mark Thaler in care of his apparent home address at 2123 12th Place NW, Washington DC. Nurse Lestrange's letter referenced that Mark Thaler had past surgery (no date provided) for inflammatory bowel

10

disease and that due to his ongoing treatment and related "immunosuppression" concerns Nurse Lestrange was recommending that Mark Thaler should not appear in court "as an advisor." [We note that the younger Mr. Thaler was not listed as a trial witness.] Further, Nurse Lestrange noted that if his father [Dr. Thaler] did attend trial, "... it would be recommended that [they] remain apart for a period of quarantine."

As an aside, we were also led to believe that Dr. Thaler's dental practice was an ongoing, active practice; therefore, we could only assume that Dr. Thaler was interacting with his staff and patients throughout Covid.

Again, Defendant's counsel opposed the late request, noting that he had witnesses lined up to appear and further, that his elderly client was also fearful of contracting Covid, but that he and she were satisfied that the President Judge's protocols were very reasonable; therefore, Mrs. Novak intended to be present and participate throughout the entire trial.

We again assured Plaintiff's counsel that we would do everything possible to limit Plaintiff's exposure, including excusing Plaintiff from jury selection on Monday and after opening statements and what we assumed would be Plaintiff's immediate testimony as the first witness, we would excuse Plaintiff from participating any further in the trial after the completion of his testimony. Thus, Plaintiff merely had to walk from his car into our Courtroom, sit at counsel table to be called as a witness and

11

then leave the Courthouse without directly interacting with any additional people. Plaintiff's counsel seemed to be satisfied with our efforts. Ultimately, we were unimpressed with the alleged emergency request. Therefore, after consultation with counsel, we denied the continuance request and wrote on the attached proposed order that we denied the request. We then returned the documents to counsel. Apparently, Plaintiff's counsel did not to file his pleading seeking a continuance, nor our written denial that day.

Counsel for the respective parties (and Mrs. Novak) appeared for jury selection on Monday, September 21, 2020. We then picked our jury and swore the jury in to return the next day to commence trial. The next day we reconvened at 8:30 a.m. to conduct opening statements. Plaintiff's counsel appeared without his client and indicated that his client opted not to appear due to his continued concerns about COVID; and therefore, Plaintiff's counsel conceded that he could not go forward with his case. Thereafter, Defendant asked for a directed verdict. We granted Defendant's motion for a directed verdict and later entered a written Order that same date granting a directed verdict in favor of the Defendant and against Plaintiff, as after jury selection Plaintiff failed to appear to present evidence in support of its claim.

Apparently, at 9:13 a.m. on September 22, 2020, after the entry of the directed verdict on the record, Plaintiff's counsel appeared in the

12

Prothonotary's office to file the Motion for continuance, with the attached denial dated September 18, 2020.

On October 21, 2020, Plaintiff, BT Management, LLC, filed it first Notice of Appeal to the Order dated September 22, 2020 in which we entered a directed verdict in favor of Defendant and against Plaintiff, dismissing the Plaintiff's cause of action because, after jury selection, Plaintiff failed to appear to present its cause of action.

On October 22, 2020, we filed our Pennsylvania Rule of Appellate Procedure 1925(b) Statement of Matters Complained of on Appeal.

On November 12, 2020, we received Plaintiff's 1925(b) Statement.

The matter was remanded by the Superior Court on January 4, 2022. The remand noted that our Order was not reduced to a final judgment and, therefore, the Superior Court lacked jurisdiction. The Superior Court quashed the Appeal. Further, Superior Court noted that Defendant improperly filed a "snap" Praecipe for judgement on September 23, 2020, well before time for seeking a new trial had expired. As a result, the judgment was void and had no legal effect. The Superior Court's order also opined that we should not have entered a directed verdict, but rather we should have entered a directive for a non-suit.

After remand, we held several conferences with counsel to determine the route forward, prior to entering our Order of February 14, 2022 for nonsuit based upon Plaintiff's failure to present any evidence.

13

## The Matters Complained Of On Appeal

The eight count complaint involves the sale of four proposed lots from the expected subdivision. The four lots were described as the Sheetz Pad (designated for a gas station and convenience store), the Embassy Pad (a proposed bank), McDonald's Pad (fast food store). The fourth lot was unidentified and alleged to be part of the two "Ratification" agreements in which Plaintiff was to obtain an option to purchase the fourth lot. The Complaint contained five counts for specific performance for the Amended Sheetz Pad, Embassy Pad, McDonald's Pad, and the two "Ratification" agreements. The remaining three counts were plead in the alternate seeking money damages for breach of contract related to the Sheetz, Embassy, and McDonald's Pads.

Here, the Statute of Frauds, which applies to contracts for the sale of real property requires "an adequate description of the property, a recital of the consideration and the signature of the party to be charged." See *Zuk v. Zuk*, 55 A.3d 102, 107 (Pa Super Court 2012).

Judge McFadden's concise summary judgment order of July 9, 2019, succinctly noted that the claims for specific performance must fail because none of the agreements provide an adequate description of the properties to be conveyed. Therefore, Counts I, III, V, VII and VII were dismissed. We agree with Judge McFadden's assessment. No additional discussion is required.

14

Our summary judgment order dated July 15, 2020, dismissed Counts IV and VI for different violations of the Statute of Frauds. We feel comfortable resting upon our Order with its detailed Statement of Reasons in support thereof. However, by way of a quick summary: Count IV was dismissed as the Embassy Pad Agreement was totally silent as to the property to be conveyed. Although Section 1.01 of the agreement purported to identify the parcel to be convey, the description merely referenced an "Exhibit A." Further, Section 1.01 did not provide any identification as to what Exhibit A was intended to be as there was no reference to a deed, engineering plan, tax map, or a meets and bounds description. Additionally, no Exhibit A was attached to agreement or otherwise produced in discovery. Therefore, as the parties made no attempt to identify or describe the property to be convey, the Embassy agreement was not enforceable. In addition, we dismissed Count VI because the alleged agreement was not signed by Defendant. The McDonald's agreement was signed by Plaintiff's Owner/Managing Member, Mr. Thaler. The signature line for Defendant contained the purported signature of Louis P. Pektor. Discovery confirmed that Mr. Pektor was not an owner, managing member, or an employee of Defendant 7065-A William Penn Highway, LLC. Further, no written agency agreement existed. Therefore, the McDonald's Pad agreement was not enforceable under the Statute of Frauds.

15

Next, we are not aware of any Order entered in this docket dated July 22, 2019, which precluded the testimony of Peter Terry, P.E. as an expert witness. See Statement of Matters at ¶ 15. We can find no Order addressing this issue. We know nothing about the witness, his participation in this controversy, nor could we find a report which set forth his expert opinion.

Finally, as to the complaint that we abused our discretion in denying Plaintiff's procedurally defective request for a continuance on the eve of trial, one need only review that Memorandum opinion which set forth in detail the course of events supporting our denial of the continuance request. Supra at 5-12. We stand on the factual record in support of our exercise of discretion in denying the last minute continuance request, for a non-emergency based solely upon Plaintiff's fear of Covid.

We respectfully submit, that all dispositive orders entered in this matter are well-founded and supported by case law. Further, the denial of the continuance request was not an abuse of discretion.

**BY THE COURT:**

_____

**STEPHEN G. BARATTA, J.**